UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorney Present for Plaintiff(s): | | Attorney Present for Defendant(s): |
| None Present | | None Present |

**Proceedings:** (In Chambers) Order Re: Motion to Dismiss First Amended Complaint

Having reviewed and considered all the briefing filed with respect to Defendants' Motion to Dismiss the Corrected First Amended Complaint (Dkt. 52, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

### INTRODUCTION

Lead plaintiffs Michael Hamblett ("Hamblett") and Robert Shavelle ("Shavelle"),[1] on behalf of a class of purchasers of Goldcorp stock ("plaintiffs"), filed their Corrected First Amended Complaint for Violations of Federal Securities Laws (Dkt. 49, "FAC") against: (1) Goldcorp, Inc. ("Goldcorp"); (2) former CEO and president Charles A. Jeannes ("Jeannes"); (3) former CFO Lindsay A. Hall ("Hall"); (4) current CEO and president David A. Garofalo ("Garofalo"); and (5) current CFO Russell D. Ball ("Ball"). (See id. at p.1 & ¶¶ 15, 16, 18, 20, 22). Plaintiffs assert two federal securities violations on behalf of a class of purchasers from March 31, 2014 to October 3, 2016 ("class period"): (1) §10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5 promulgated thereunder against all defendants; and (2) § 20(a) of the 1934 Act for control person liability against individual defendants Jeannes, Hall, Garofalo, and Ball. (See id. at ¶¶ 1, 131-147).

### ALLEGATIONS IN THE CORRECTED FIRST AMENDED COMPLAINT

"Goldcorp is a leading gold producer [] in Canada, the United States, Mexico, and Central and South America." (Dkt. 49, FAC at ¶ 28). "[T]he Peñasquito mine is the largest gold producer in Mexico[,]" and "Goldcorp's largest mine[]." (Id. at ¶¶ 29-30). "[I]n 2015, Peñasquito accounted for approximately one-quarter of Goldcorp's total output and one-third of its sales[.]" (Id. at ¶ 30).

---

[1] Hamblett and Shavelle were appointed lead plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(3). (See Dkt. 44, Court's Order of November 21, 2016, at 2; Dkt. 49, FAC at ¶¶ 12-13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
|---|---|---|---|
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

The gold mining process creates liquid waste materials, which are called tailings, "that are often hazardous to the environment and human health." (Dkt. 49, FAC at ¶ 38). "A tailings dam, which results in a tailings pond, [is] designed for permanent containment of the toxic waste[.]" (Id.). The Peñasquito tailings dam is a zero discharge facility, which means there should be no discharge of wastewater. (See id. at ¶ 60). Goldcorp monitored potential leaks through "wells dug within close proximity of the tailings dam for the purpose of detecting and monitoring poly-metallic substances and potential leaks." (Id. at ¶ 61).

Plaintiffs' FAC, in large part, relies on an August 24, 2016, Reuters article entitled, Goldcorp Struggles with Leak at Mexican Mine ("Reuters article"). (See Dkt. 49, FAC at ¶ 78). According to "Goldcorp data reviewed by Reuters," "as early as October 2013," "[l]evels of the mineral selenium[2] rose in one groundwater monitoring well near Goldcorp's Peñasquito mine."[3] (Id.).

In October 2014, Goldcorp "reported a rise in selenium levels in groundwater to the Mexican government [], after which the contamination near its mine waste facility intensified, according to internal company documents seen by Reuters, and interviews with government officials." (Dkt. 49, FAC at ¶ 78). According to the Reuters article, Mexico "establish[es] maximum selenium concentrations of 0.01 mg per liter in drinking water[,]" "0.008 mg/l in fresh water bodies and 0.02 mg/l in water for agricultural use." (Id.). "Levels in the groundwater at Peñasquito rose to more than five times that level, the data shows." (Id.). "The concentration began falling in April 2015 and from September [2015] at least through January [2016] it was steady at 0.01 mg/liter." (Id.).

An internal September 2015 Goldcorp presentation outlined the risks of the selenium leak:

---

[2] "Exposure to high levels of selenium may lead to dizziness, fatigue, irritation of the digestive tract and – in extreme cases – may lead to collection of fluid in the lungs and bronchitis." (Dkt. 49, FAC at ¶ 4). "Ingestion of elevated levels of selenium over long periods of time may lead to effects such as brittle hair, deformed nails, tooth decay, irritation of the digestive tract, fatigue, depression and loss of feeling in the arms and legs." (Id.). "Selenium is also harmful to the environment, including animals and agriculture." (Id.).

[3] On January 9, 2014, Goldcorp issued a Form 6K, which attached Goldcorp's Technical Report for the Peñasquito Polymetallic Operation. (See Dkt. 49, FAC at ¶ 65). The Form 6K disclosed that "[p]otentially acid-forming waste (PAG) materials and rock types that have [metal leaching] potential are currently stored in the waste rock. The tailings materials have somewhat higher potential to produce [acid rock drainage] and [metal leaching] (selenium being the only metal potentially outside Mexican standards). Control of [acid rock drainage] and [metal leaching] from tailings materials will be achieved through reclamation of the current tailings facility after its closure in 2017." (Id.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
|---|---|---|---|
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

(1) "community knowledge and understanding of potential groundwater contamination may raise national and international attention[;]" and (2) "long term impacts to human health and the environment if the plume is not adequately mitigated." (Dkt. 49, FAC at ¶ 78). "A presentation dated March 2016 [] said one of the steps [Goldcorp] was taking to address the leak was to relocate a pond that reclaims water from the tailings." (Id.). "[Goldorp] told Reuters that project should be completed next year[,]" (id.), i.e., in 2017.

On August 10, 2016, Goldcorp "told Mexican regulators that contaminated water had also been found in other areas of its property." (Dkt. 49, FAC at ¶ 78; see id. ("Goldcorp described leaks in three other areas to the west and south of the facility, in addition to the original well.")). Mexico's environmental enforcement agency "told Reuters [the] unit was examining the case to see whether Goldcorp had downplayed or not fully disclosed relevant information." (Dkt. 49, FAC at ¶ 78). Also, "Mexican regulators said they are examining whether [Goldcorp] broke any regulations in its handling of a longrunning leak of contaminated water at [the Peñasquito] mine."[4] (Id.).

Although "it would have been preferable for Goldcorp to inform the local community about the leaks," Mexican environmental authorities reported that Goldcorp "was not legally required to tell the community" about the leak, because "the problem had not spread beyond [Goldcorp's] boundaries." (Dkt. 49, FAC at ¶ 78). "Goldcorp said it has not informed villagers living near the mine because its tests showed the leak had not affected groundwater beyond its property line or contaminated the local drinking water." (Id.). Residents near the mine submitted at least two complaints to environmental authorities about seepage from the wall of the tailings dam. (See id.).

On the day the Reuters article was released, "on August 24, 2016, the Company's stock price fell $1.64 per share, or approximately 9% from its previous closing price, to close at $16.05 per share." (Dkt. 49, FAC at ¶ 6).

On September 22, 2016, a Mexican newspaper reported that residents near the mine "protested in front of the principal access to Goldcorp's open-pit gold mine, Peñasquito [] to demand that they stop contaminating the underground water systems with selenium and other chemical elements."[5] (Dkt. 49, FAC at ¶ 85). The residents claimed that Goldcorp failed to comply with promises it made, including: "perforation of water wells for human drinking, compensation[]

---

[4] In 2013, Mexican environmental authorities fined Goldcorp for non-compliance with air-emission standards, (see Dkt. 49, FAC at ¶ 56); in 2014, Goldcorp paid approximately $250,000 in fines for unspecified reasons, (see id.), and; during the class period, Mexican authorities initiated and completed five administrative proceedings against Goldcorp. (See id. at ¶ 57).

[5] In 2015, a community blockade prevented Goldcorp from accessing a distant groundwater source due to concerns that its use would "substantially deplete[] aquifer levels, leaving farmers with insufficient water for their crops." (Dkt. 49, FAC at ¶ 36).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | **September 6, 2017** |
|---|---|---|---|
| Title | **Robert Cowan, et al. v. Goldcorp, et al.** | | |

for damaged lands, and direct and indirect employment for residents in the area."[6] (Id.).

On September 26, 2016, the villagers began a blockade, which continued until October 3, 2016, when Goldcorp announced a shutdown of the mine until the blockade ended. (See Dkt. 49, FAC at ¶ 86). One newspaper reported that while Goldcorp said the blockade was caused "by a trucking contractor concerned about losing business due to efficiency improvements at the mine," a protest leader said that landowners were at the protest and made demands for "payment for environmental damages, jobs, and water for their communities." (Id. at ¶ 87). In response to the news of the blockade and mine shutdown, Goldcorp's stock price fell another $.074, or approximately 5% from its previous closing price, to close at $15.78 per share. (Id. at ¶ 89). On October 8, 2016, Goldcorp announced that the blockade had lifted after Goldcorp "promised to renew contracts with carriers, expand and establish two health centers, improve infrastructure in [a] nearby city, and study water and air to assess whether it should compensate communities for contamination." (Id. at ¶ 90).

**DISCUSSION**

To state a claim under the 1934 Act, plaintiffs must meet the "exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act[, 15 U.S.C. § 78u-4 ('Reform Act').]" Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 604 (9th Cir. 2014); Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1164 (9th Cir. 2009) ("At the pleading stage, a complaint stating claims under section 10(b) and Rule 10-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA."). Under the Reform Act, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Additionally,"the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Finally, "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).

In addition, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This includes "the who, what, when, where, and how of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Yourish v. Calif. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (internal quotation marks omitted). This requirement "can be satisfied by pointing

---

[6] During the class period, Goldcorp has been engaged in litigation with local communities "over pending land claims [] in the Mexican agrarian court." (Dkt. 49, FAC at ¶ 33).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
|---|---|---|---|
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." Rubke, 551 F.3d at 1161 (internal quotation marks omitted).

Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment must "be applied with extreme liberality."). The Ninth Circuit has recognized that, "[d]ue in large part to the enactment of the [Reform Act], plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1054-55 (9th Cir. 2008). "In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (internal quotation marks omitted). Given the high pleading standards that plaintiffs must meet to state a federal securities claim, the court will give plaintiffs another opportunity to state a claim. Plaintiffs should carefully and thoroughly review and revise the FAC, as this will be plaintiffs' third opportunity to state a claim.

    A.    <u>Material Misrepresentations or Omissions</u>.[7]

Plaintiffs allege that defendants made material misstatements or omissions in their: (1) 2013, 2014, and 2015 Annual Reports; and (2) 2014 and 2015 First, Second, and Third Quarterly Reports, (see Dkt. 49, FAC at ¶¶ 91(a)-(d), 93, 95, 99, 101(a)-(d), 103, 105, 107, 110), by failing to disclose that "selenium levels had suddenly begun rising sharply at the Peñasquito mine," and "ultimately reached more than five times the allowable limit permitted by Mexican regulations." (See id. at ¶¶ 92, 94, 96, 98, 100, 102, 104, 106, 108, 111). According to plaintiffs, it was "misleading for Goldcorp to tout its tailings management and Peñasquito operations while omitting

---

[7] The parties dispute whether certain statements in the annual and quarterly reports are forward-looking statements of estimates or projections, or cautionary statements outlining risks. (Compare Dkt. 52, Motion at 8-11 with Dkt. 57, Plaintiffs' Opposition to Defendants' Motion to Dismiss [] ("Opp.") at 11-12). The statements do not appear to be forward-looking statements "containing a projection of revenues," "plans and objectives" for future operations, "future economic performance," or other "projection or estimate." See 15 U.S.C. § 78u-5(i)(1). To the extent any of defendants' statements contain any forward-looking elements, they would be "mixed statements," containing both forward-looking and non-forward looking statements. See In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130, 1142 (9th Cir. 2017) ("where defendants make mixed statements containing non-forward-looking statements as well as forward-looking statements, the non-forward-looking statements are not protected by the safe harbor of the [Reform Act]"). Although defendants contend that the cautionary statements at issue are "not actionable as a matter of law," (Dkt. 52, Motion at 10 (citing cases)), the court considers whether each cautionary statement constitutes an affirmatively false or misleading statement at the time it was made.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
|---|---|---|---|
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

that selenium levels were reaching alarming levels, in clear contravention of Mexican law, due to a leak in the tailings dam." (Dkt. 57, Opp. at 14; see id. at 8 ("Defendants' falsity arguments hinge on its brazen denial that Goldcorp has committed any environmental violations"); id. at 9 (the FAC alleges "facts [that] establish prima facie environmental violations")).

With one exception,[8] it appears that plaintiffs have not adequately alleged, with the detail or corroboration required under the Reform Act, that defendants' statements are materially false or misleading. See 15 U.S.C. § 78u-4(b)(1) (plaintiffs "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"); In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005), cert. denied, 546 U.S. 1172 (2006) (to state a claim under the Reform Act, the complaint must contain "adequate corroborating details") (internal quotation marks omitted); see, e.g., Rubke, 551 F.3d at 1165 ("Because the First Amended Complaint only provides detailed allegations about Pedisich's calls, however, and fails to allege with particularity that Capitol or its officers either made similar calls themselves or exhorted Pedisich to make the calls, these allegations are not sufficient to meet the PSLRA's pleading requirements for either falsity or scienter.").

Plaintiffs' allegations rely extensively on the Reuters article, (see Dkt. 49, FAC at ¶ 78), and the internal reports referenced in that article. (See id.). The FAC is bereft of any other "corroborating details." See In re Daou Sys., Inc., 411 F.3d at 1015. While the Reuters article raises significant concerns as to whether defendants concealed their violations of Mexico's environmental laws and regulations, the FAC does not, for example, include: (1) corroboration by a confidential witness, see, e.g., Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 995 (9th Cir. 2009), as amended (Feb. 10, 2009) (confidential witnesses "must be described with sufficient particularity to establish their reliability and personal knowledge[,]" and "those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of [falsity]"); (2) corroboration by an expert, see, e.g. In re Silicon Storage Tech., Inc., Sec. Litig., 2007 WL 760535, *30 (N.D. Cal. 2007) ("There is authority for the proposition that a plaintiff in a securities fraud action controlled by the requirements of the [Reform Act] can support its allegations of falsity with facts provided by an expert."); or (3) specific Mexican laws and regulations applicable to the Peñasquito mine.

---

[8] The court is skeptical that defendants' statements with respect to their Sustainability Policy, (see Dkt. 49, FAC at ¶¶ 91(b), 101(b), & 109(b)), are actionable under the securities laws. (See Dkt. 57, Opp. at 15-16). The court is inclined to agree that such statements are merely "aspirational statement[s] of intention," which are difficult to measure, and not a "warranty" of compliance. See, e.g., Retail Wholesale & Dept. Store Union Local 338 Ret. Fund v. Hewlett-Packard Co., 52 F.Supp.3d 961, 970 (N.D. Cal. 2014) (CEO's multiple breaches of company's code of conduct, which CEO promoted in the wake of an earlier company scandal, nevertheless did not fall within the purview of the federal securities laws).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
|---|---|---|---|
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

Plaintiffs, however, have adequately alleged that Jeannes, Goldcorp's former CEO and president, made a false or misleading statement at the Denver Gold Forum on September 16, 2014:

> I'm happy to report that the [Peñasquito] mine continues to perform very well, mine and mill. We're on track to grow our production this year to between 530,000 ounces and 560,000 ounces. We have the water we need to achieve that production guidance for this year and we have our Northern Well Field project, which will give us the long-term water supply for Peñasquito and that's advancing on schedule for mid-next year. So everything going well operationally there. And then we've also got some exciting studies under way at Peñasquito on our metallurgical process where they're called concentrate enrichment and pyrite leach projects. Both of these are going to be completed, pre-feasibility studies around year-end. So look for news in the new year, but we think there's real opportunity to improve the economics at Peñasquito.

(Dkt. 49, FAC at ¶ 97). According to the "Goldcorp data reviewed by Reuters," "as early as October 2013," "[l]evels of the mineral selenium rose in one groundwater monitoring well near Goldcorp's Peñasquito mine," (Dkt. 49, FAC at ¶ 78), and only weeks later, in October 2014, Goldcorp "reported a rise in selenium levels in groundwater to the Mexican government," which "began falling in April 2015." (Id.). The Reuters article, coupled with defendants' Form 6K, disclosed that selenium levels were "potentially outside Mexican standards[.]" (See id. at ¶ 65). Thus, Jeannes' statement that "everything [is] going well operationally," such that there's a "real opportunity to improve the economics at Peñasquito," is materially false or misleading.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | **September 6, 2017** |
|---|---|---|---|
| Title | **Robert Cowan, et al. v. Goldcorp, et al.** | | |

B.  Scienter.[9]

Like falsity, plaintiffs' allegations regarding scienter must satisfy the heightened pleading requirements of the Reform Act. "To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." Zucco Partners, 552 F.3d at 991 (internal quotation marks omitted). When considering scienter, the court "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324, 127 S.Ct. 2499, 2510 (2007). Although "[t]he inference [of scienter] need not be irrefutable, . . . or even the most plausible of competing inferences," id. (internal quotation marks omitted) it "must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other [countervailing] explanations." Id.

Plaintiffs contend that after reviewing: (1) the Form 6K, which disclosed that "selenium [levels were] potentially outside Mexican standards," (see Dkt. 57, Opp. at 17-18; Dkt. 49, FAC at ¶ 65), and other company internal reports, (see Dkt. 57, Opp. at 19-21); (Dkt. 49, FAC at ¶ 78), defendants "had a duty to inquire whether the Peñasquito mine was actually in compliance with Mexican environmental law." (Dkt. 57, Opp. at 19). According to plaintiffs, defendants recklessly disregarded Goldcorp's "contraven[tion of] Mexican environmental law." (Id.). These allegations, while troubling, are insufficient because, "[a]lthough the Ninth Circuit has not definitively addressed whether group pleading may be adequate in certain instances, courts within the Ninth Circuit have largely concluded that group pleading is not compatible with the [Reform Act's] requirements."[10]

---

[9] Contrary to plaintiffs' contention, (see Dkt. 57, Opp. at 10), the "truth-on-the-market" defense is inapplicable in this instance. The defense applies with respect to negating the element of reliance. See Provenz v. Miller, 102 F.3d 1478, 1493 (9th Cir. 1996), cert. denied, 522 U.S. 808 (1997) ("Summary judgment is proper only if they show that 'no rational jury could find' that the market was misled."); In re Countrywide Fin. Corp. Sec. Litig., 588 F.Supp.2d 1132, 1160 (C.D. Cal. 2008) (rejecting defendants' contention that 250,000 pages of prospectuses negate element of reliance); In re Seagate Tech. II Sec. Litig., 802 F.Supp. 271, 274 (N.D. Cal. 1992) (in addition to reliance, truth-on-the-market "subsumes the inquiry into materiality, causation and damages"). At this stage of the case, the question is whether plaintiffs adequately alleged falsity, scienter, and loss causation.

[10] To the extent plaintiffs contend that the core operations inference applies, (see Dkt. 57, Opp. at 22); S. Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 781 & 786 (9th Cir. 2008) (the court may infer that "facts critical to a business's 'core operations' or important transactions are known to key company officers" "in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter"), plaintiffs have, as noted above, failed to allege adequate corroborating details as to the alleged environmental violations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | September 6, 2017 |
|---|---|---|---|
| Title | Robert Cowan, et al. v. Goldcorp, et al. | | |

In re Am. Apparel, Inc. S'holder Litig., 2013 WL 10914316, *15 n. 143 (C.D. Cal. 2013) (citing cases).

In addition, although plaintiffs have adequately alleged that Jeannes made a false or misleading statement, plaintiffs' allegations do not appear to address whether Jeannes made that statement knowingly or with deliberate recklessness, or provide details as to what Jeannes reviewed, was told, or otherwise knew. (See, generally, Dkt. 57, Opp. at 17-23; Dkt. 49, FAC at ¶¶ 17, 25); see In re Daou Sys., Inc., 411 F.3d at 1022–23 (scienter adequately alleged when the complaint relied on specific and particular accusations about the role played by the defendants in managing the company, including specific allegations that defendants actually did monitor the data that was the subject of the allegedly false statements); Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1231 (9th Cir. 2004) (scienter adequately alleged when the complaint quoted the CEO stating, "All of our information is on one database. We know exactly how much we have sold in the last hour around the world," and included "hard numbers and . . . specific allegations regarding large portions of Oracle's sales data").

III.   LOSS CAUSATION.

"To prove loss causation, the Plaintiffs must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the Plaintiffs." Or. Pub. Emps. Ret. Fund, 774 F.3d at 608 (internal quotation marks and brackets omitted). "Thus, like a plaintiff claiming deceit at common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event."[11] Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016). "Stated in the affirmative, the complaint must allege that the defendant's share price fell significantly after the truth became known" or was "revealed to the market[.]" Metzler Inv. GMBH, 540 F.3d at 1062 & 1063 (internal quotation marks omitted).

Here, plaintiffs allege that the Reuters article revealed to the investing public that "there was a long-running selenium leak at the Peñasquito mine that resulted in selenium levels in the surrounding ground water that were well above the legally allowable limit." (Dkt. 57, Opp. at 24; Dkt. 49, FAC at ¶¶ 77-82). According to plaintiffs, "on August 24, 2016, the Company's stock price fell $1.64 per share, or approximately 9% from its previous closing price, to close at $16.05 per

---

[11] This is because the "lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 343, 125 S.Ct. 1627, 1632 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-6391 FMO (AFMx) | Date | **September 6, 2017** |
|---|---|---|---|
| Title | **Robert Cowan, et al. v. Goldcorp, et al.** | | |

share," (Dkt. 49, FAC at ¶ 6), and, on October 3, 2016,[12] "Goldcorp's stock price fell another $.074, or approximately 5% from its previous closing price, to close at $15.78 per share." (Id. at ¶ 89; see Dkt. 57, Opp. at 24-25). However, other than the Reuters article, plaintiffs "do not allege specific statements made by the Defendants that were made untrue or called into question by subsequent public disclosures." See Or. Pub. Emps. Ret. Fund, 774 F.3d at 608 ("To prove loss causation, the Plaintiffs must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the Plaintiffs."). Moreover, the Reuters article announced that Mexican environmental authorities were conducting an investigation, (see Dkt. 49, FAC at ¶ 78), and stated that "[t]here is no evidence that the leaks at the mine have endangered public health or caused environmental damage, Goldcorp and regulators say."[13] (Id.); see Loos v. Immersion Corp., 762 F.3d 880, 883 (9th Cir. 2014), as amended (Sept. 11, 2014) ("[T]he announcement of an investigation, standing alone, is insufficient to establish loss causation."); Lloyd, 811 F.3d at 1203 ("[T]he announcement of an SEC investigation related to an alleged misrepresentation, coupled with a subsequent revelation of the inaccuracy of that misrepresentation, can serve as a corrective disclosure for the purpose of loss causation.").

**CONCLUSION**

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss the Corrected First Amended Complaint [] (**Document No. 52**) is **granted in part** and **denied in part**. The Motion is **denied** with respect to plaintiffs' allegation that defendant Jeannes made a false or misleading statement. In all other respects, the Motion is **granted**.

2. The FAC is dismissed with leave to amend. If plaintiffs still wish to pursue this action, they are granted until **September 28, 2017**, to file a Second Amended Complaint attempting to

---

[12] Should defendants file another motion to dismiss, the parties should address whether plaintiffs have adequately alleged loss causation with respect to the October 3, 2016, blockade, and whether a stock price drop can be attributed to multiple factors, including revelation of defendants' environmental violations, the mine shutdown and/or the blockade.

[13] "Section 20(a) [] require[s] underlying primary violations of the securities laws." In re Rigel Pharm., Inc. Sec. Litig., 697 F.3d 869, 886 (9th Cir. 2012) (citing 15 U.S.C. § 78t(a)). Because plaintiffs have failed to adequately plead a violation of the federal securities laws, it follows that plaintiffs have also failed to plead violations of § 20(a). See Lloyd, 811 F.3d at 1206 n. 2 (Section 20(a) control person liability claim "rises or falls with the primary violation claim").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 16-6391 FMO (AFMx)** | Date | **September 6, 2017** |
|---|---|---|---|
| Title | **Robert Cowan, et al. v. Goldcorp, et al.** | | |

cure, to the extent they believe is warranted by existing law, the defects outlined in this Order. The amended complaint must be labeled "Second Amended Complaint," filed in compliance with Local Rule 3-2 and contain the case number assigned to the case, i.e., Case No. CV 16-6391 FMO (AFMx). In addition, plaintiffs are informed that the court cannot refer to a prior pleading in order to make the Second Amended Complaint complete. Local Rule 15-2 requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, 'the original pleading no longer performs any function[.]'") (citations and internal quotation marks omitted).

3. In the event one or more defendants wish to file another motion to dismiss, then counsel for the parties shall, on **October 5, 2017, at 10:00 a.m.**[14] meet and confer in person at an agreed upon location within the Central District of California to discuss defendants' motion(s) to dismiss. Defendants' motion(s) must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to include such a declaration will result in the motion(s) being denied.

4. Plaintiffs are cautioned that failure to timely file a Second Amended Complaint may result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order. See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962).

5. Defendants shall file their answer or motion pursuant to Fed. R. Civ. P. 12 no later than **October 19, 2017**.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

---

[14] Counsel may agree to meet and confer at another time and place without seeking court approval for such an agreement.